943 So.2d 487 (2006)
ANGELO IAFRATE CONSTRUCTION CO.
v.
Billy HERRING
Billy Herring
v.
J.I.C.
Nos. 2005 CA 1461, 2005 CA 1462.
Court of Appeal of Louisiana, First Circuit.
September 1, 2006.
*488 Michael B. Forbes, Hammond, for Defendant-Appellee Billy Herring.
Christopher M. Landry, Raquelle M. Badeaux-Phillips, Metairie, for Appellant.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this workers' compensation action, it was undisputed that claimant was injured while in the course and scope of his employment. *489 Following videotape surveillance, employer subsequently terminated benefits pursuant to La. R.S. 23:1208. Employer now appeals from a judgment ordering a reinstatement of claimant's benefits. We affirm.

FACTS
Billy R. Herring ("claimant") fell from a roof while in the course and scope of his employment with Angelo Iafrate Construction Company ("Iafrate")[1] on January 24, 2001. Claimant alleged injuries to his ribs, lung, shoulder, and neck. As a result of said injuries, the Office of Worker's Compensation ("OWC") ordered Iafrate to pay benefits to claimant.
Due to conflicting opinions between the claimant's choice of physician and the physician selected by the employer, Iafrate requested that an independent medical examiner ("IME") be appointed pursuant to La. R.S. 23:1124.1. Accordingly, the OWC granted Iafrate's motion and claimant was examined by Dr. Treg Brown on or about March 13, 2003. Within one week of said examination, Iafrate secured a surveillance film and corresponding written reports wherein claimant was engaged in a number of outdoor activities for which claimant had allegedly advised the IME that he could not perform.
Iafrate filed a Disputed Claim for Compensation on August 12, 2003. Claimant's indemnity and medical benefits were subsequently terminated on August 26, 2003, due to claimant's alleged violation of La. R.S. 23:1208. Claimant also filed a Disputed Claim for Compensation against J.I.C. on October 3, 2003, and these matters were later consolidated on December 10, 2003.
Subsequently, on May 20, 2004, the OWC granted Iafrate's motion to have the IME review the surveillance materials pursuant to La. R.S. 23:1317.1.
A hearing was held in this matter on August 30, 2004. At the hearing, Iafrate alleged that claimant had violated La. R.S. 23:1208 by making a false representation. Following the hearing and review of the exhibits and testimony, the OWC, on August 30, 2004, signed a judgment holding that Iafrate had failed to prove that claimant had violated La. R.S. 23:1208. Accordingly, the OWC ordered Iafrate to reinstate both medical and indemnity benefits retroactive to their suspension on August 26, 2003. Iafrate was also assessed judicial interest at the rate of 4.5 percent on all outstanding indemnity benefits from August 26, 2003. From this judgment, Iafrate has appealed.

ISSUES
In connection with its appeal in this matter, Iafrate raises the following issues for review and consideration by this court:
1) Whether claimant has violated La. R.S. 23:1208 by deliberately representing his case for the purpose of obtaining worker's compensation benefits and, thus, has forfeited all benefits he would be entitled to under the Louisiana Workers' Compensation Act;
2) Whether the Court erred in not awarding restitution, penalties and attorneys' fees along with the La. R.S. 23:1208 allegation to the employer for claimant's fraudulent actions.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an *490 appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Id.

ANALYSIS
In this matter, the workers' compensation judge determined that claimant had not intentionally misrepresented facts in an attempt to obtain workers' compensation benefits. Iafrate, claimant's former employer, contends that pursuant to the provisions of La. R.S. 23:1208, claimant is no longer entitled to workers' compensation benefits based upon his misrepresentation of facts in an effort to continue receiving benefits. In pertinent part, La. R.S. 23:1208 provides:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This section was intended to prevent and discourage fraud in relation to workers' compensation claims. Newman v. Richard Price Construction, 02-0995, p. 4 (La.App. 1 Cir. 8/8/03), 859 So.2d 136, 140. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Resweber v. Haroil Construction Company, 94-2708, 94-3138 pp. 1-2, (La.9/5/95), 660 So.2d 7, 9. The statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber, 94-2708, 94-3138 at 7, 660 So.2d at 12. Louisiana Revised Statute 23:1208 applies in all circumstances where (1) there is a false statement or representation, (2) the statement or representation is willfully made, and (3) the statement or representation is made for the purpose of obtaining workers' compensation benefits. Resweber, 94-2708, 94-3138 at 11, 660 So.2d at 14. The statute generally becomes applicable at the time of an employee's accident or claim. Resweber, 94-2708, 94-3138, at 10, 660 So.2d at 14. The issue of whether an employee forfeited workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Davis v. AMS Tube Corp., 02-2427 (La. App. 1 Cir. 12/31/03), 868 So.2d 141, writ denied, 04-0286 (La.3/26/04), 871 So.2d 354.
Iafrate conducted video surveillance of claimant February 18, and March 13, 18 *491 and 19, 2003. On March 18, 2003, claimant was videotaped loading garbage cans containing what appeared to be construction debris into the bed of his pick-up truck, and later emptying out water that had apparently accumulated inside the can. On March 19, 2003, claimant was videotaped climbing up and down a ladder using a circular saw.
When questioned at the hearing regarding these activities, claimant testified:
A. There was nothing ever said about working with a saw or nothing, [Dr. Robichaux] just said, "Do what you can and if I was you I would try to work with five to twenty pounds." He said I had a petite muscle or something like that, I forget how he put that, and I needed to try to build that back. He said that when I walked, I needed to put some kind of little weight in my hands.
Q. From the time you fell off the roof and first hurt yourself until the time you saw Dr. Brown [the IME], had you improved somewhat?
A. Yes.
* * * *
Q. By the time you saw Dr. Brown, you were actually better and able to do most of these things by yourself.
A. Now I do. He asked me a lot of questions. He asked me could I wash dishes, could I vacuum the floor, could I hang up clothes, could I wash clothes? I don't know why he asked me all of that.
Q. Did you tell him that you were adapting to your condition?
A. Yes.
* * * *
Q. All right. Was it your hope, Mr. Herring, that you would be able to go back to some kind of work?
A. Yes, but the lady from workers' comp wrote me a letter and said they had discussed it and they had decided that I wasn't going back to work. Now, this come from Gallagher and Basset [Iafrate's workers' compensation insurer].
Q. All right. But you still tried to do as much as you could, right?
A. Yes. I figured eventually I would go back to work doing something or another.
Q. Did you ever intentionally tell anybody anything about your injuries that wasn't true?
A. No, no. I might have left off a little bit of it. You don't just go telling people you're hurting 24 hours a day. I mean, sometimes you tell them you are feeling good and all that, but 
Q. Did you tell the various doctors that some days were better than others?
A. Oh yeah, I told them that. Some days were pretty good and I felt pretty normal. Then I had days that I was a long way from normal.
At the conclusion of the hearing, the workers' compensation judge, after consideration of the testimony and evidence submitted, opined:
The issue in this case is whether or not Mr. Herring has violated 1208, Revised Statute 23:1208 for the purpose of obtaining benefits. That statute reads as follows: "A) It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person to willfully make a false statement or representation." Now, the statement or representation that is being alleged in this case to have been false is with regard to Mr. Herring's representations to Dr. Brown concerning his abilities or inabilities with regard to his ability to *492 perform certain tasks or inability to perform certain tasks. . . . .
I am of the opinion, after reading Dr. Robichaux's deposition, Dr. Lee's deposition, Dr. Brown's deposition, Dr. Robichaux, Dr. Lee's and Dr. Brown's records, viewing the video tape, reading the investigator's report and his deposition, that Mr. Herring has not violated 1208. Do I feel that there may have been . . . a miscommunication between Mr. Herring and Dr. Brown? I do. Mr. Herring is very obviously hard of hearing.
* * * *
This gentleman had a window that had to be covered in order to protect his property and he went out and he did it. If I had this gentleman working on someone else's house, I'd have a problem. If he was doing something for pay, I'd have a problem, but doing stuff around his own home to try to make it livable, even if they are activities that he should not do or that he told the doctor that he doesn't do, I do not have anything to show that he does this on a daily basis, that this is something that he can do every day and that he doesn't suffer for it when he tries to do it. He's got an obvious deformity as a result of this accident and the broken clavicle.
* * * *
I would reinstate his benefits at the SEB characterization, at the full rate until such time as the circumstances change to be able to show that there is work out there that he can do. I do not feel that he made a willful misrepresentation in order to obtain benefits.
After a review of the record and consideration of the evidence presented, we find no manifest error in OWC's finding that claimant did not make a willful misrepresentation in order to obtain benefits. Accordingly, we affirm OWC's reinstatement of benefits to claimant. Considering the above finding, the remaining issue raised by Iafrate is now moot.

DECREE
For the above and foregoing reasons, the judgment of the OWC ordering a reinstatement of claimant's benefits is affirmed. All costs associated with this appeal are assessed to Angelo Iafrate Construction Company, a/k/a James Construction Group.
AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] Angelo Iafrate Construction Company is now known as James Construction Group.