GAIDRY, J.
| gThis is an appeal of a judgment rendered by the Office of Workers’ Compensation (“OWC”), in the Parish of West Feliciana, in favor of the Appellee, Sandra Roullier, and against the Appellant, Cypress Health Care Management Region IV (“Cypress”), awarding Ms. Roullier benefits for an injury she received during the course and scope of her employment with Cypress, including penalties and attorney fees. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Ms. Roullier had been employed with Cypress as a licensed practical nurse for almost ten years up until the injury at issue, which occurred on June 15, 2009. On that date, Ms. Roullier, claims to have tripped on a large ladder that had been left in the medicine room of her workplace, causing her to fall onto her back.
Ms. Roullier contacted orthopedist Dr. Kyle Girod the next day about her injury. She had been seeing Dr. Girod already for two or three years due to existing back pain. He had recommended surgery to her in June of 2007 to alleviate the pain, but Ms. Roullier instead opted to take medication in order to deal with the pain. Despite having pre-existing back pain from L3 to L5 degenerative disc disease, which may have originated from an accident she had twenty years prior, Ms. Roullier claimed it never caused her to miss work; however, since the accident at Cypress, she has not been able to return to work there, nor has she been able to perform work anywhere else, on the recommendation of Dr. Girod.
Compensation was initially paid by Cypress in the amount of $439.56 per week, beginning September 18, 2009, and eventually ending on July 1, |s2010. Ms. Roullier makes no claim for penalties or attorney fees on these payments.
Following the accident, Ms. Roullier received an MRI which showed a new herniation in the L5-S1 disc of her lower spine, as well as new degenerative disc disease. Dr. Girod once again recommended surgery to her on or about September 29, 2009 to fuse the L3 to SI vertebrae, which she declined. Cypress referred Ms. Roul-lier to Dr. Joe Morgan on or about December 16, 2009. His examination agreed with Dr. Girod’s in that there was a new herniation in L5-S1, but disagreed with the surgery recommendation because he did not think the herniation was the result of the fall on June 15, 2009. Dr. Morgan instead recommended a simpler disc dissection procedure. The herniation surgery was not approved by Cypress. Instead, Cypress offered to perform the disc dissection recommended by Dr. Morgan, but Ms. Roullier did not accept.
From that time onward, Ms. Roullier claimed to be in severe pain, and as a result lost nearly 30 pounds. Dr. Girod *363 maintained her on pain medication throughout this period. Then, on May 7, 2010, Cypress sent a letter to Dr. Girod authorizing surgery for the disc dissection only. On July 9, 2010, Dr. Girod obtained the results from Ms. Roullier’s MRI of June 8, 2010, and concluded that she was no longer a candidate for surgery because the herniation had resolved. He referred her to a pain specialist, Dr. Tulsi Bice, for pain management, but Ms. Roullier’s first visit to Dr. Bice was not until July 6, 2011. Ms. Roullier claimed she did not immediately see Dr. Bice because she had hoped the pain would subside on its own, but it did not Cypress terminated benefits to Ms. Roullier on July 1, 2010.
On August 20, 2010, Dr. Girod reached the opinion that Ms. Roullier’s pain and condition worsened. He again recommended surgery ]4and determined that although she had pre-existing conditions, the conditions worsened after her fall of June 15, 2009. Ms. Roullier claims her pain before June 15, 2009 was manageable, but that afterward she was so debilitated by it that she could not perform her job duties or even perform housework. Cypress claims Ms. Roullier’s medical records show that before and after the accident at issue, her pain levels fluctuated from mild to severe, and that Dr. Girod had recommended pain management to her before the accident as well. Cypress therefore claims there is insufficient evidence that Ms. Roullier’s ongoing pain is a direct result from the accident on June 15, 2009.
Following the hearing on November 8, 2011, OWC found in favor of Ms. Roullier and against Cypress, awarding disability benefits at $466.13 per week, beginning from July 1, 2010 to the present, plus interest, payment of all related medical expenses to Drs. Girod and Bice, penalties of $2,000.00 for Cypress’s arbitrary and capricious termination of her benefits, penalties of $2,000.00 for Cypress’s unreasonable delay in authorizing the surgery recommended by Dr. Girod and failure to authorize pain management, and $8,000.00 in attorney fees. Cypress filed a suspen-sive appeal on January 3, 2012.
ASSIGNMENTS OF ERROR
Cypress claims the OWC judge erred in finding: 1. Ms. Roullier to have been temporarily and totally disabled after failing to prove disability by clear and convincing evidence; 2. Ms. Roullier was entitled to pain management treatment when Dr. Girod testified that any remaining pain management treatment was not related to Ms. Roullier’s alleged workplace accident; 3. Cypress acted arbitrarily and capriciously for terminating temporary and total disability benefits in July of 2010 and for failing to | ^authorize pain management treatment recommended by Drs. Girod and Bice, and for awarding a $2,000.00 penalty for each finding.
STANDARD OF REVIEW
The appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-elearly wrong” standard. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. If the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the factfinder, it would have weighed the evidence differently. Merrill v. Greyhound Lines, Inc., 2010-0834 (La.App. 4 Cir. 6/29/11), 70 So.3d 991, 995, unit denied, 2011-1712 (La.10/14/11), 74 So.3d 214. [Citations omitted]
*364 DISCUSSION
Our supreme court has held pre-exist-ing disease or infirmity of an employee does not disqualify a compensation claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. A disabled employee must prove that before the work-injury he had not manifested disabling symptoms, but that commencing with the work-injury the disabling symptoms appeared and there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the work-injury and the activation of the disabling condition. Aucoin v. Dow Chemical Company, 98-1912, fn. 1 (La.App. 1 Cir. 9/24/99), 745 So.2d 682, 684, writ denied 1999-3596 (La.2/18/00), 754 So.2d 968, citing Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-325 (La. 1985).
Ms. Roullier had already been seeing Dr. Girod for degenerative disc disease and other complications. The record indicates her first visit with Dr. Girod was on June 13, 2006, but she had treated with other doctors for back pain before then. From an MRI on that date, Ms. Roullier was found to have degenerative disc disease at L3-4 and L4-5, and Dr. Girod maintained this diagnosis until and past June 15, 2009. Throughout this time, Ms. Roullier worked at Cypress without missing work, managing her back pain with medication.
|fiOn Ms. Roullier’s visit with Dr. Girod on July 10, 2009, Dr. Girod reported that her condition “has worsened.” While she still had the degenerative disc disease in L3-4 and L4-5, the MRI showed Ms. Roullier now had degenerative disc disease at L2-3, and disc herniation at L5-S1. Dr. Girod reported on this date “with the fall, she had a significant increase in her back pain. It was tolerable before.”
Dr. Girod reported that the disc herniation at L5-S1 had resolved on July 9, 2010 following an MRI, but that the degenerative disc disease from L2-3 to L5-S1 continued. He maintained that her condition had worsened from her accident on June 15, 2009. By Ms. Roullier’s final visit to Dr. Girod in the record, on November 12, 2010, her condition had not changed.
When Cypress terminated Ms. Roullier’s workers’ compensation benefits on July 1, 2010, her last visit to Dr. Girod had been on May 14, 2010. At that time she was still diagnosed with disc herniation, and Dr. Girod was prepared to perform decompression surgery after one more MRI was performed, since her previous one had been almost a year prior. He had also issued to her a temporary handicapped parking tag and continued her on medication. The first visit immediately following the termination of benefits was on July 9, 2010. At that time, Dr. Girod had viewed the results of the MRI taken on June 8, 2010, and reported that the herniation had resolved, but all other conditions remained.
A workers’ compensation claimant’s disability is presumed to have resulted from the accident if the injured person was in good health before the accident but, commencing with the accident, symptoms of the disabling condition appear and continually manifest themselves afterwards. Banks v. Jefferson Parish School Board, 95-779 (La.App. 5 Cir. 2/14/96), 670 So.2d 1284, 1287. To be entitled to workers’ compensation benefits, the claimant |7must submit sufficient medical evidence to demonstrate the reasonable possibility of a causal connection between the employment accident and the disabling condition. Id. There is a clear and convincing burden of *365 proof required to qualify for temporary total disability benefits, which requires proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt. Id.
From our review of the record, which contains Ms. Roullier’s medical history, we see a causal link between Ms. Roullier’s accident of June 15, 2009 and the aggravation of her pre-existing conditions in her back. The aggravation resulted in disc herniation and the spread of Ms. Roullier’s degenerative disc disease. After the accident, Ms. Roullier’s functionality at work was minimal to non-existent. Although Dr. Girod recommended surgery that was designed to cure the herniation, Cypress would not approve of the surgery. Instead, Cypress offered a different kind of surgery recommended by Dr. Joe Morgan, who was not Ms. Roullier’s treating physician. OWC heard both opinions of the doctors and found Dr. Girod’s to be the correct one. OWC believed that the surgery recommended by Dr. Girod was the proper one for Ms. Roullier, and it was denied by Cypress. She never received the surgery, and her back pain continued to worsen. We therefore agree with OWC under a “manifest error-clearly wrong” analysis that by clear and convincing evidence Ms. Roullier was disabled by her June 15, 2009 accident during the course and scope of her employment with Cypress.
OWC awarded two penalties of $2,000.00 against Cypress pursuant to La. R.S. 23:1201, which allows a penalty of $50.00 per calendar day for each day in which any and all compensation or medical benefits remain unpaid, but this penalty shall not exceed $2,000.00, which accounts for forty | Rdays. Since Cypress terminated benefits on July 1, 2010, but Ms. Roullier’s increased degenerative disc disease is still present, the $2,000.00 limit has been easily met for the termination of medical benefits. As the authorization for surgery was unreasonably delayed for a year, the other $2,000.00 penalty is also warranted. As there is justification for the two penalties, whether a penalty should be levied for Cypress’s refusal to authorize medical benefits for pain management is a moot issue with respect to the penalty.
However, the weekly disability benefits should remain at $466.13, plus interest, and should not be augmented to cover ongoing pain management. We disagree with OWC on the issue of Cypress’s refusal to cover Ms. Roullier’s pain management. She was undergoing a pain management regimen long before the accident of June 15, 2009 occurred. After the accident, that regimen was re-urged by her doctors. Ms. Roullier was referred to Dr. Bice for pain treatment, but delayed the first visit for almost a year after being referred. Ms. Roullier instead opted to manage her pain in much the same way she had done before the accident, which was through medication prescribed by Dr. Girod. We disagree with OWC that Ms. Roullier has shown by clear and convincing evidence that Cypress should have covered her pain management with Dr. Bice as a direct result from her accident on June 15, 2009, but we do not disturb that aspect of the judgment with respect to Dr. Girod or other treating health care providers.
CONCLUSION
We agree that Ms. Roullier has met her burden of proof by clear and convincing evidence that she was disabled by a fall occurring on June 15, 2009, while under the course and scope of her then-employer Cypress, thereby aggravating a pre-exist-ing condition of pain in her back. Cypress’s termination of Ms. Roullier’s benefits were arbitrary and capricious, and a |flpenalty is warranted. Cypress should *366 also be penalized for wrongfully withholding authorization for the surgery recommended by Dr. Girod.
DECREE
The judgment rendered by the Office of Workers’ Compensation, District 5, in favor of the Appellee, Sandra M. Roullier, and against the Appellant, Cypress Healthcare Management Region IV, is affirmed. Ms. Roullier is awarded medical benefits in the amount of $466.13 per week, with interest, prorated from the date of July 1, 2010. A penalty of $2,000.00 is assessed against Cypress for wrongfully terminating Ms. Roullier’s medical benefits, and another penalty of $2,000.00 is assessed against Cypress for the arbitrary and capricious delay in authorizing surgery for Ms. Roullier. Ms. Roullier is also awarded $8,000.00 in attorney fees. Payment to all health care providers, excluding Dr. Bice, is to be paid pursuant to the Louisiana Fee Schedule, for all medical expenses related to Ms. Roullier’s claim. All costs relating to this appeal are assessed to the Appellant.
AFFIRMED IN PART, REVERSED IN PART.