CHUTZ, J.
*161 In this workers' compensation case, defendant-appellant, Smitty's Supply, Inc. (Smitty's), appeals a judgment awarding claimant-appellee, Lance Shelton, total temporary disability (TTD) benefits, medical expenses, penalties, and attorney fees. For the following reasons, we reverse in part, amend in part, and affirm in part.
FACTUAL AND PROCEDURAL BACKGROUND
Mr. Shelton began working at Smitty's, a packaging facility for automotive products and oils, on a prison work-release program in 2009. Following his release from incarceration, he continued working at Smitty's and was promoted to "line leader." In that position, he was responsible for maintaining proper production and quality on his production line. The production line overseen by Mr. Shelton consisted of a conveyer belt carrying empty bottles forward to be filled with oil products. The filled bottles were then carried under a hopper through which bottle caps were automatically fed and mechanically placed on the bottles by a "cap machine." A metal ladder with hand rails was located next to the hopper. In order to periodically refill the hopper, an employee was required to climb the ladder with a large box of bottle caps and dump them into the top of the hopper. Mr. Shelton testified the ladder was also used to check on the caps, which occasionally became "jammed" and had to be pushed down in order to flow freely.
On February 17, 2016, Mr. Shelton was descending the ladder when he missed a step and fell to the floor. The accident was recorded by a surveillance camera.[1] Mr. Shelton testified at trial he had climbed the ladder either to dump caps into the hopper or to check whether it needed to be refilled or had any obstructions. Shortly after the accident, he reported the fall to his supervisor and completed a written accident report. In the report, Mr. Shelton described the accident as follows: "Come Down from Stairs dumping caps in capper foot slipped and i [sic] fell on my knees and side." Mr. Shelton completed his shift, but sat down for the remainder of the day while supervising the production line.
Two days later, on February 19, Mr. Shelton spoke to his supervisor about obtaining medical treatment and was directed by Smitty's personnel to the Amite Rural Health Clinic (ARHC). Mr. Shelton complained of pain in both knees and was diagnosed with sprains in both knees. He was placed on light duty for the next three days. When he returned to ARHC on February 24, he was given a Medrol dose pack and continued on light duty.
On February 25, Smitty's terminated Mr. Shelton's employment for reasons ostensibly unrelated to the accident. The stated reason was that Mr. Shelton falsified company records on the date of the accident by indicating he made weight checks on the products for the entire shift, which was contradicted by the surveillance *162 video. At trial, Mr. Shelton explained that, although he did sit down for most of the remainder of the shift following his accident, he had tried to keep the production line moving and had one of his subordinates perform the weight checks.
On March 4, 2016, Mr. Shelton filed a disputed claim for compensation seeking indemnity benefits. He later amended the claim to also request physical therapy and surgery expenses, as well as penalties and attorney fees due to the denial of his claims for indemnity and medical benefits. As his choice of physician, Mr. Shelton designated Dr. Brett Chiasson, an orthopedic surgeon he had seen on two prior visits, approximately seven months earlier, concerning longtime pain (two years) in his left knee. In August 2015, an MRI was performed on Mr. Shelton's knee on Dr. Chiasson's orders. After Dr. Chiasson gave Mr. Shelton an injection in his left knee on August 28, 2015, he did not seek further treatment from Dr. Chiasson until after his February 2016 accident.
Following the accident, Mr. Shelton was examined by a nurse practitioner in Dr. Chiasson's office on March 11, 2016. Although he complained of bilateral knee pain, he was experiencing more significant pain and mechanical symptoms in his left knee, including difficulty bearing weight, inability to climb stairs, and giving way of his knee. An MRI of Mr. Shelton's left knee taken on March 16 indicated a "possible contusion and degeneration of the ACL with a ganglion cyst and edema noted." On a return visit on March 18, Mr. Shelton reported significant pain "with ambulation" to his left knee. He was given an injection in the left knee and a referral for physical therapy. His right knee continued to improve. Following both office visits, Mr. Shelton's work status was classified as "presently unable to work."
The request for physical therapy was denied on March 23 by Jim Nowak, an adjuster with Veritas Claims, who was assigned to handle Mr. Shelton's workers' compensation claim. The stated reason for the denial was that "[t]he request, or a portion thereof, is not related to the on-the-job injury."
At a May 16 office visit with Dr. Chiasson, Mr. Shelton complained of an inability to walk on stairs without difficulty and a buckling sensation in his left knee. Dr. Chiasson's physical examination revealed "palpable tenderness along the medial and lateral jointline" and "decreased range of motion, secondary to pain." Because Mr. Shelton had not improved with conservative treatment, Dr. Chiasson recommended proceeding with an arthroscopic evaluation of his left knee, as well as an ACL reconstruction, if indicated.
On May 18, Mr. Nowak denied approval for the arthroscopic procedure on the same grounds that he denied the request for physical therapy. In his deposition, Mr. Nowak did not deny that an accident had occurred. However, he indicated he believed Mr. Shelton's condition was degenerative in nature and unrelated to his work accident. On this basis, as well as the fact that Mr. Shelton had been released to light duty by ARHC, Mr. Nowak also denied Mr. Shelton's claim for indemnity benefits.
Mr. Shelton filed a motion for partial summary judgment on the issue of his entitlement to temporary total disability (TTD) benefits. At a hearing on the motion held on August 24, 2016, defense counsel argued Mr. Shelton "staged" the accident. The workers' compensation judge (WCJ) denied the motion for summary judgment, finding that the "existence of an accident" as well as whether Mr. Shelton's disability "was related to a 'work accident' or if it was a 'staged' event" presented genuine issues of material fact. On December 15, *163 2016, Smitty's filed an amended answer in which it alleged fraud by Mr. Shelton, asserting he "made willful misrepresentations for the purpose of obtaining compensation."
Following a trial held on January 30 and April 5, 2017, the WCJ rendered a written judgment rejecting Smitty's contention that Mr. Shelton had committed fraud in order to obtain workers' compensation benefits. The WCJ concluded Mr. Shelton was injured in a work accident that aggravated the pre-existing condition in his left knee and awarded him TTD benefits in the amount of $673.23 per week from March 11, 2016, until the judgment was modified. The WCJ also awarded Mr. Shelton all medical bills and expenses at issue, including the costs of the physical therapy and arthroscopic surgery recommended by Dr. Chiasson. Additionally, the WCJ imposed costs, penalties of twelve percent of the unpaid compensation, and two awards for attorney fees in the amount of $20,000.00 each on Smitty's due to its failure to timely pay and/or approve indemnity benefits and medical expenses. Smitty's appealed, raising five assignments of error. Mr. Shelton answered the appeal and requested additional attorney fees for the work necessitated by the appeal.
ASSIGNMENTS OF ERROR
1. The WCJ legally erred in finding Mr. Shelton did not violate La. R.S. 23:1208 by making willful misrepresentations for the purpose of obtaining workers' compensation benefits.
2. The WCJ legally erred in awarding Mr. Shelton TTD benefits as a result of finding he suffered a work accident that injured his left knee.
3. The WCJ legally erred in awarding penalties and attorney fees based on her finding that Smitty's did not reasonably controvert Mr. Shelton's entitlement to workers' compensation benefits.
4. The WCJ legally erred in making two awards for attorney fees ($20,000.00 each) in violation of La. R.S. 23:1201(J).
5. The WCJ legally erred in awarding Mr. Shelton weekly indemnity benefits in an amount greater than the maximum weekly indemnity amount allowed by La. R.S. 23:1202.
STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Angelo Iafrate Construction Co. v. Herring , 05-1461 (La. App. 1st Cir. 9/1/06), 943 So.2d 487, 489-90, writ denied, 06-2365 (La. 12/8/06), 943 So.2d 1097. An appellate court cannot set aside the factual findings of the WCJ unless it determines there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Angelo Iafrate Construction Co. , 943 So.2d at 489-90. If the WCJ's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier-of-fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the factfinder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Angelo Iafrate Construction Co. , 943 So.2d at 490.
ASSIGNMENT OF ERROR NUMBER ONE
Smitty's contends the WCJ erred in failing to find Mr. Shelton violated *164 La. R.S. 23:1208 by willfully making false statements and misrepresentations for the purpose of obtaining workers' compensation benefits. Smitty's argues the evidence proved not only that Mr. Shelton lied about how the accident occurred, but also about the nature and extent of his pre-existing medical condition.
Louisiana Revised Statutes 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Louisiana Revised Statutes 23:1208 applies in all circumstances where: (1) there is a false statement or representation; (2) the statement or representation is willfully made ; and (3) the statement or representation is made for the purpose of obtaining workers' compensation benefits. Resweber v. Haroil Construction Company , 94-2708 (La. 9/5/95), 660 So.2d 7, 14. Because forfeiture of benefits is a harsh remedy, however, statutory forfeiture must be strictly construed. An employer has the burden of proving each element within the statute, and the lack of any element is fatal to the employer's avoidance of liability. Varnado v. Sanderson Farms, Inc. , 14-1305 (La. App. 1st Cir. 3/6/15), 166 So.3d 340, 343.
Smitty's alleges Mr. Shelton made willful misrepresentations: (1) in stating in the accident report that he was coming down the ladder after dumping caps in the hopper, when the surveillance video unmistakably shows him climbing and descending the ladder empty-handed; (2) in testifying Dr. Chiasson told him in August 2015 that his left knee was "fine" and in denying Dr. Chiasson discussed the possibility of surgery on his knee at that time; and (3) in failing to disclose to the medical staff at ARHC his pre-existing knee condition and the fact that he had had an MRI on his left knee in August 2015.
Discrepancy Between Accident Report and Surveillance Video :
At trial, Mr. Shelton testified he believed he was either dumping caps or checking the caps in the hopper when he fell. He indicated those would have been the only two reasons for him to have climbed the ladder. Although Mr. Shelton indicated in his accident report that he was descending the ladder after dumping caps in the hopper when he fell, the surveillance video reveals he neither carried a box of caps up the ladder nor dumped any caps into the hopper. Smitty's contends the discrepancy between the accident report and the surveillance video proves Mr. Shelton lied about how the accident occurred.
We agree the surveillance video establishes Mr. Shelton's statement that he was descending the ladder after dumping caps was false. Nevertheless, making a false statement does not necessarily equate to making a willful misrepresentation. Louisiana Revised Statutes 23:1208 requires a showing that a misrepresentation was willfully made for the purpose of obtaining benefits. Clark v. Godfrey Knight Farms, Inc. , 08-1723 (La. App. 1st Cir. 2/13/09), 6 So.3d 284, 290, writ denied, 09-0562 (La. 5/29/09), 9 So.3d 163. Once it has been determined that a false statement or representation has been made, the WCJ must make a factual determination as to whether, based on the record, the statement or representation was willfully made for the purpose of fraudulently obtaining *165 workers' compensation benefits. Fontenot v. State, Department of Health & Hospitals , 12-1265 (La. App. 1st Cir. 4/2/13), 116 So.3d 695, 698.
In this case, the surveillance video shows that upon reaching the top of the ladder, Mr. Shelton looked into the hopper as though checking it and then reached inside it and appeared to push downward. Mr. Shelton indicated it was sometimes necessary to push the caps down in the hopper to make them flow freely. Additionally, Mr. Shelton testified that between checking on the hopper and keeping it filled with caps, it was necessary for someone to climb the ladder sometimes as many as 40 to 50 times a shift. Considering the necessity for frequently climbing the ladder, together with Mr. Shelton appearing to check on the hopper in the video, it is possible he may merely have been confused when he completed the accident report as to whether he had been dumping caps or checking on the hopper prior to his fall. Under such circumstances, the misstatement in his accident report could have been an inadvertent error, which is apparently what the WCJ concluded.
Alleged Misrepresentations of Discussion with Dr. Chiasson:
Smitty's asserts Mr. Shelton willfully misrepresented, both in his deposition and at trial, what he was told concerning the condition of his left knee when he was treated by Dr. Chiasson and had an MRI performed in August 2015. At trial, Mr. Shelton testified Dr. Chiasson told him at that time that he could find nothing wrong with his knee and, after giving him an injection in his left knee, Dr. Chiasson told him to come back if he had any further problems. He denied Dr. Chiasson either told him the August 2015 MRI revealed a possible ACL tear or discussed the possibility of arthroscopic surgery with him. On cross-examination, Mr. Shelton was reminded that he had indicated during his deposition that Dr. Chiasson specifically told him "everything was fine" with his knee. He was then asked whether he had meant what he testified to in his deposition. He responded that while he did not recall verbatim what Dr. Chiasson had said in August 2015, what he took away from the discussion was that his knee was fine.
Dr. Chiasson testified in his deposition that Mr. Shelton's left knee was not "fine" when he saw him in August 2015. At an August 3 visit, Mr. Shelton reported pain in his left knee with mechanical symptoms, and a subsequent MRI revealed a "possible ACL tear." At an August 28 visit, Dr. Chiasson injected Mr. Shelton's left knee with Depo-Medrol and gave him a prescription for an anti-inflammatory medication. Dr. Chiasson's office notes indicate that if Mr. Shelton continued to complain of mechanical symptoms after undergoing a series of injections, "he would be a candidate for diagnostic arthroscopy to assess his ACL." Dr. Chiasson indicated he discussed the possibility of a diagnostic arthroscopy with Mr. Shelton.
Again, while discrepancies exist between the respective testimony of Mr. Shelton and of Dr. Chiasson, the mere existence of the discrepancies is not conclusive proof of willful misrepresentation. At trial, Mr. Shelton testified what he understood from his discussion with Dr. Shelton was that "if I didn't have [any more] discomfort in my knee after the [injection], I took that to be everything was fine because I didn't have [any more] discomfort." During their discussion, Dr. Chiasson did not tell Mr. Shelton he had a tom ACL or that he definitely would require arthroscopic surgery. He indicated there was a possible ACL tear and that Mr. Shelton might require arthroscopic surgeryif he continued to exhibit symptoms. Given that *166 these were mere possibilities, Mr. Shelton could have failed to fully comprehend the specifics of what Dr. Chiasson told him, particularly since he experienced no more problems with his left knee until after his February 2016 accident. Further, the WCJ could have concluded the discrepancies at issue could be "dismissed as errors common to an imperfect memory." See Hubbard v. Allied Building Stores, Inc. , 41,534 (La. App. 2d Cir. 11/1/06), 942 So.2d 639, 643.
Failure to Disclose Medical Information to ARHC :
Lastly, Smitty's contends Mr. Shelton willfully misrepresented his injury and medical history to ARHC medical staff by failing to disclose his pre-existing left knee condition and his August 2015 MRI. Smitty's asserts Mr. Shelton misled the medical staff "because he wanted to blame his pre-existing left knee problems on his 'staged accident' in order to obtain workers' compensation." However, the suggestion that Mr. Shelton made misrepresentations in order to hide the pre-existing condition of his left knee is entirely inconsistent with his designation of Dr. Chiasson, who had previously treated him for that condition, as his treating physician.
The WCJ heard all of the evidence presented concerning the alleged misrepresentations made by Mr. Shelton. The WCJ also heard evidence presented by Smitty's attacking Mr. Shelton's credibility, including the fact that he had been fired from two prior jobs and had several felony convictions. In rendering judgment that Smitty's failed to carry its burden of proving fraud, the WCJ concluded, "[Mr. Shelton] has not violated La. R.S. 23:1208 (by willfully making a false statement or representation for the purpose of obtaining workers' compensation benefits.)." The WCJ specifically stated it had considered the credibility of the witnesses in reaching its judgment.
Where, as here, the factual determinations of the WCJ are based on credibility determinations, the manifest error standard of review demands great deference to the trier-of-fact's findings, for only the factfinder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. Varnado , 166 So.3d at 344. When factual findings are based on a credibility determination, a factfinder's decision to credit the testimony of a witness can virtually never be manifestly erroneous. See Clark , 6 So.3d at 290.
After a thorough review of the record and according due deference to the WCJ's credibility determinations, we find no manifest error in the WCJ's ruling that Mr. Shelton did not violate La. R.S. 23:1208 by making willful false statements or misrepresentations. Proof of intent, which is a state of mind, need not be established as a fact by direct evidence, but may be inferred from the facts regarding an individual's actions and other circumstances. Schmidt v. Blue Cross & Blue Shield of Louisiana, Inc. , 33,910 (La. App. 2d Cir. 9/27/00), 769 So.2d 179, 183, writ denied, 00-3011 (La. 12/15/00), 777 So.2d 1234 ; Ledet v. Burgess , 93-600 (La. App. 5th Cir. 2/9/94), 632 So.2d 1185, 1186. The WCJ's finding concerning Mr. Shelton's intent is reasonably supported by the record since the circumstances provide a basis for concluding any misrepresentations he made were either inadvertent or attributable to factors other than willful prevarication.
ASSIGNMENT OF ERROR NUMBER TWO
Smitty's argues the WCJ erred in awarding TTD benefits to Mr. Shelton *167 based on manifestly erroneous findings that: (1) a work-related accident[2] occurred; (2) Mr. Shelton's left knee was injured in the accident; and (3) Mr. Shelton was disabled as a result of the work-related injury.
Work-related Accident:
In order to recover workers' compensation benefits, a claimant must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. Crawford v. Pontchartrain Materials , 06-1780 (La. App. 1st Cir. 3/28/07), 960 So.2d 946, 950. Based on the discrepancy between the surveillance video and the accident report prepared by Mr. Shelton, Smitty's contends "[a] reasonable trier of fact cannot reconcile [Mr. Shelton's] 'Accident Statement' and the video." Thus, Smitty's argues the evidence, particularly the surveillance video, casts serious doubt on Mr. Shelton's version of the accident and proves the accident was "staged."
We disagree with Smitty's central premise that the existence of a discrepancy between the surveillance video and the accident report leads to the inevitable conclusion that Mr. Shelton's accident was "staged." As discussed above, there are other possible explanations for the discrepancy. Smitty's contends the surveillance video shows Mr. Shelton on the ladder "looking around suspiciously ... and letting go with both hands and lunging onto the ground." Our review reveals that interpretation is not the only possible interpretation of the surveillance video. It can also be viewed as showing Mr. Shelton descending the ladder normally, miscalculating which step he is on, stepping downward, and stumbling to the floor upon losing his balance.
The surveillance video clearly shows Mr. Shelton falling from the ladder to the floor. A conclusion as to whether the fall was "staged" or was accidental was largely dependent on the WCJ's evaluation of the surveillance video and Mr. Shelton's testimony in light of her credibility determinations. Based on our review of the record, with due deference to the WCJ's credibility determinations, we cannot say her finding that a work-related accident occurred was manifestly erroneous or clearly wrong.
Causation and Disability :
Smitty's also contends the WCJ committed manifest error both in finding Mr. Shelton sustained an injury to his left knee in the alleged accident and in finding he was temporarily, totally disabled as a result of that injury.
In arguing there was no injury, Smitty's points out that Mr. Shelton had longstanding problems with his left knee and had actually been treated for those same problems only six months earlier. According to Dr. Chiasson's deposition testimony, his findings and the treatments he recommended at the time of Mr. Shelton's August 2015 visits were basically the same as they were following the February 2016 accident. Moreover, the findings of the two MRIs taken in August 2015 and March 2016 were very similar.
It is undisputed Mr. Shelton experienced pain and mechanical symptoms in his left knee intermittently for over two years prior to his initial visit to Dr. Chiasson in August 2015. Dr. Chiasson injected Mr. Shelton's left knee with Depo-Medrol and advised him to return in *168 four weeks. Dr. Chiasson noted that if Mr. Shelton continued to complain of mechanical symptoms after undergoing a series of injections, "he would be a candidate for diagnostic arthroscopy to assess his ACL." Dr. Chiasson did not place any work restrictions on Mr. Shelton at that time.
Following the August 2015 injection, Mr. Shelton did not return to see Dr. Chiasson because he experienced no further problems with his knee at that time. Moreover, he did not miss any work, leave work early, or have any problems with his knee affecting his job performance until after his accident in February 2016
Additionally, the March 2016 MRI indicated a contusion to Mr. Shelton's left knee that was not present on the August 2015 MRI. Following the accident, Mr. Shelton also, for the first time, had a positive McMurray's test,[3] which is an indication of a possible meniscus tear, displayed new symptoms of pain upon active and passive range of motion, resulting in a decreased range of motion, and had tenderness along the medial and lateral joint line. Another new symptom was an inability to climb stairs without difficulty. Based on his treatment of Mr. Shelton before and after the accident, Dr. Chiasson opined it was possible the accident aggravated the condition of Mr. Shelton's left knee.
Significantly, Mr. Shelton experienced no symptoms disabling him from working prior to the accident, but beginning shortly thereafter, work restrictions were imposed on him and it was recommended for the first time that he receive physical therapy. Initially, on February 19, 2016, ARHC placed him on light duty for three days, and he was continued on light duty at his February 24 visit. After he was terminated from Smitty's, Mr. Shelton did not return to ARHC. Following his March 11 visit to Dr. Chiasson's office, his work status was changed to unable to work.
Mr. Shelton's final visit with Dr. Chiasson was on May 16, 2016. He has received no treatment for his left knee since that date. He explained that since Smitty's denied him medical benefits, he has had no money to obtain treatment. Mr. Shelton further testified that he remains unable to work due to his inability to stand long without pain and his knee giving out on him.
A pre-existing disease or infirmity of an employee does not disqualify a workers' compensation claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which benefits are claimed. A disabled employee must prove that before the work-related injury he had not manifested disabling symptoms, but that commencing with the work-injury, the disabling symptoms appeared and there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the work-injury and the activation of the disabling condition. Roullier v. Cypress Healthcare Mgmt. Region IV , 12-0222 (La. App. 1st Cir. 11/2/12), 111 So.3d 360, 364 ; Aucoin v. Dow Chemical Company , 98-1912 (La. App. 1st Cir. 9/24/99), 745 So.2d 682, 684 n.1, writ denied, 99-3596 (La. 2/18/00), 754 So.2d 968.
As evidence that Mr. Shelton was not disabled, Smitty's presented the testimony of Sonya Spears, his estranged wife. She testified she and Mr. Shelton are still married, although they physically separated in *169 June 2016. According to Ms. Spears, from the time of the accident until they separated, Mr. Shelton appeared to be "fine," doing everything he normally did without difficulty. He did not limp or seem to her to be injured. Ms. Spears claimed Mr. Shelton did not take pain medications after the accident and failed to take the medications prescribed for him. On cross-examination, Ms. Spears, who has worked for Smitty's since February 2015, admitted she had a conviction for forgery. She also admitted Mr. Shelton obtained a restraining order against her shortly after their separation due to her breaking out windows at his house.
Given the evidence presented, we find no error in the WCJ's findings that the February 2016 accident caused Mr. Shelton to become disabled due to the aggravation of his pre-existing left knee condition. Prior to the accident, Mr. Shelton had no disabling symptoms and did not miss work as a result of his pre-existing knee condition. Although he had intermittent symptoms for an extended period, after receiving the August 2015 injection, he had no problems with his knee for nearly six months prior to the accident. Further, the medical evidence, including the contusion shown on his March 2016 MRI, the new symptoms he experienced after the accident, and his work status being classified for the first time as unable to work support the WCJ's findings that the accident injured Mr. Shelton and aggravated his pre-existing knee condition. Moreover, Mr. Shelton's testimony concerning his physical inability to work, combined with the medical evidence classifying his work status as unable to work, supported the WCJ's finding that he was temporarily, totally disabled. The WCJ obviously rejected the testimony of Mr. Shelton's estranged wife, which was introduced to contradict Mr. Shelton's testimony regarding his inability to work. Considering the circumstances, together with the WCJ's credibility determinations, we cannot say her factual determinations that Mr. Shelton was disabled, and that the disability was caused by the February 2016 accident, were manifestly erroneous or clearly wrong.
ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, Smitty's argues the WCJ erred in awarding penalties and attorney fees pursuant to La. R.S. 23:1201(F)(2) because it had a reasonable basis to controvert Mr. Shelton's claim for workers' compensation benefits. Specifically, Smitty's contends the discrepancy between the accident report prepared by Mr. Shelton and the surveillance video provided sufficient information to reasonably controvert his claim. Smitty's further contends the medical evidence establishing that Mr. Shelton's "pre-accident findings, treatments, and recommendations regarding [his] left knee were the same as those following the alleged work accident" provided an additional basis to controvert the claim.
Under La. R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorneys fees for failure to timely pay indemnity or medical benefits where the employer or insurer has failed to reasonably controvert the claim. See La. R.S. 23:1201(F)(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant. Clark v. Godfrey Knight Farms, Inc. , 08-1723 (La. App. 1st Cir. 2/13/09), 6 So.3d 284, 297, writ denied, 09-0562 (La. 5/29/09), 9 So.3d 163. Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed.
*170 Authement v. Wal-Mart , 02-2434 (La. App. 1st Cir. 9/26/03), 857 So.2d 564, 574. The claimant bears the burden of proving his entitlement to statutory penalties and attorney fees due to the employer's failure to timely pay workers' compensation benefits. Davis v. Farm Fresh Food Supplier , 03-1381 (La. App. 1st Cir. 5/14/04), 879 So.2d 215, 220. The crucial inquiry is whether the employer has an articulated and objective reason for denying payment at the time it took that action. See Lewis v. Temple Inland , 11-0729 (La. App. 1st Cir. 11/9/11), 80 So.3d 52, 58. A determination of whether an employer or insurer has failed to reasonably controvert a claim is a question of fact subject to the manifest error standard of review. Clark , 6 So.3d at 297.
In the instant case, Smitty's contends it reasonably controverted Mr. Shelton's claim based on the inconsistency between the accident report and the surveillance video. In opposition, Mr. Shelton counters that there is "absolutely no indication that the adjuster took this into consideration at the time medical and indemnity benefits were initially denied in March 2016." From our review of the record, we find it does not support Smitty's contention that it denied Mr. Shelton's claim based on the inconsistency between the accident report and the surveillance video.
When Mr. Shelton's requests for physical therapy and arthroscopic surgery were denied by Mr. Nowak in March and May 2016, respectively, the stated reason for the denials was that "[t]he request, or a portion thereof, is not related to the on-the-job injury." During his deposition, Mr. Nowak, who testified it was his decision to deny Mr. Shelton benefits, was repeatedly asked why he denied indemnity and medical benefits. He never indicated the reason was that Mr. Shelton "staged" the work accident. In fact, he indicated he did not dispute that a work accident had occurred.[4] The reasons Mr. Nowak gave for denying benefits were the fact that Mr. Shelton had been released to light duty and his conclusion that Mr. Shelton's left knee condition was degenerative and totally unrelated to his work accident. Mr. Nowak based his conclusion that Mr. Shelton's condition was degenerative on the March 2016 MRI report, which included an impression of "mucinous degeneration of the [ACL]," and the March 18, 2016 report from Dr. Chiasson's office noting that impression.
We find Mr. Nowak's actions were unreasonable for two reasons. First, he relied on the fact that ARHC released Mr. Shelton to light duty on February 19, while ignoring the fact that Dr. Chiasson's office, beginning on March 11, subsequently classified him as unable to work. Where an employer or insurer initially receives a favorable medical report, but later receives information revealing the possibility of a continuing disability, it may not blindly continue to rely on the initial medical report. The employer or insurer has a continuing duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether a claim is compensable before denying benefits. Connor v. Family Dollar Store , 09-1537 (La. App. 1st Cir. 3/26/10), 36 So.3d 339, 350, writ denied, 2010-0959 (La. 6/25/10), 38 So.3d 344. Mr. Nowak's continued reliance, without conducting any further investigation, on Mr. Shelton's initial release to light duty was unreasonable once he received subsequent medical information *171 indicating Mr. Shelton was unable to work.
Additionally, Mr. Nowak was also unreasonable in denying benefits to Mr. Shelton based on the MRI report notation of "mucinous degeneration" without further investigation. The fact that Mr. Shelton had a pre-existing condition in his left knee for which he had been treated approximately six months earlier, combined with the notation, certainly raised grounds to question whether his fall caused his disability. However, the record indicates that rather than investigating the issue of causation further, Mr. Nowak, who did not claim to have any medical training, concluded on his own that Mr. Shelton's fall did not cause him any injury. Apparently, he totally ignored the possibility that the fall aggravated Mr. Shelton's pre-existing condition to the point that he became disabled. Considering that Mr. Shelton was able to work without difficulty prior to the accident, it was unreasonable for Mr. Nowak to have disregarded this possibility. He never obtained a medical opinion from Dr. Chiasson on the issue of causation. Nor did he seek an expert opinion from any other physician. Mr. Nowak failed to fulfill his duty to investigate and make every reasonable effort to assemble medical information to determine whether the fall caused Mr. Shelton's injury before denying him benefits. See Connor , 36 So.3d at 350.
Considering these facts, the record supports the WCJ's finding that Smitty's did not reasonably controvert Mr. Shelton's claim. Smitty's, through its adjuster, Mr. Nowak, acted arbitrarily and capriciously in disregarding its duty to properly investigate the claim before it was denied. See Parfait v. Gulf Island Fabrication, Inc. , 97-2104 (La. App. 1st Cir. 1/6/99), 733 So.2d 11, 25. The WCJ did not manifestly err in assessing statutory penalties and attorney fees against Smitty's.
ASSIGNMENT OF ERROR NUMBER FOUR
Smitty's argues the WCJ violated La. R.S. 23:1201(J) in rendering two attorney fees awards in the amount of $20,000.00 each in, favor of Mr. Shelton. The WCJ made one award for Smitty's failure to timely pay indemnity benefits in violation of La. R.S. 23:1201(B) and the second award for its failure to timely authorize and/or pay medical benefits in violation of La. R.S. 23:1201(E).
Louisiana Revised Statutes 23:1201(J) provides, in part:
Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section ...
In this case, the WCJ erred in making two separate awards of attorney fees for Smitty's failure to timely pay indemnity benefits and the failure to pay medical benefits. Under La. R.S. 23:1201(J), only one award of attorney fees can be made in connection with a hearing on the merits, even when multiple violations have occurred. Russell v. Regency Hospital of Covington, LLC , 08-0538 (La. App. 1st Cir. 11/14/08), 998 So.2d 301, 306. Because Mr. Shelton is entitled to only one award of attorney fees, the second award of attorney fees made by the WCJ (for the failure to pay medical benefits) must be reversed.
In his appellate brief, Mr. Shelton concedes the WCJ erred in making two separate awards of attorney fees, but argues essentially that the remaining award of $20,000.00 should be increased to *172 $40,000.00. (Shelton's appellee br., pp. 28-30) The pertinent factors to be considered in the imposition of reasonable attorney fees in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Phillips v. Sanderson Farms, Inc. , 13-0285 (La. App. 1st Cir. 11/1/13), 136 So.3d 27, 31 ; Russell , 998 So.2d at 306. Considering these factors in light of our review of the entire record, we find no error or abuse of discretion in the WCJ's award of attorney fees in the amount of $20,000.00. Accordingly, the remaining award for attorney fees in the amount of $20,000.00 will be affirmed.
ASSIGNMENT OF ERROR NUMBER FIVE
In its final assignment of error, Smitty's contends the WCJ committed legal error in awarding Mr. Shelton $673.23 in weekly compensation benefits, which exceeded the maximum compensation amount allowed by La. R.S. 23:1202(A)(2).[5] Smitty's contends the maximum weekly compensation amount permitted at the time of Mr. Shelton's alleged accident was $649.00. In brief, Mr. Shelton agrees that $649.00 was the maximum weekly compensation rate allowed for his accident and the WCJ should have awarded him compensation benefits in that amount. The judgment of the WCJ will be amended accordingly.
ANSWER TO APPEAL
In an answer to this appeal, Mr. Shelton requests an award of additional attorney fees for the work necessitated by the appeal. Additional attorney fees are usually awarded on appeal when a party appeals, but obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Atwell v. First General Services , 06-0392 (La. App. 1st Cir. 12/28/06), 951 So.2d 348, 358, writ denied, 07-0126 (La. 3/16/07), 952 So.2d 699. In this case, since Smitty's has obtained partial relief on appeal, we do not believe an award of additional attorney fees is appropriate and decline to make such an award to Mr. Shelton.
CONCLUSION
For the reasons assigned, the portion of the WCJ's judgment in favor of claimant, Lance Shelton, awarding $20,000.00 in attorney fees against defendant, Smitty's Supply, Inc., for violating La. R.S. 23:1201(E) is reversed. Further, the judgment of the WCJ is amended to reduce the amount of TTD benefits awarded to Lance Shelton from $673.23 to $649.00 per week. The judgment of the WCJ is affirmed in all other respects. The parties are to split the costs of this appeal equally.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED IN PART; ANSWER TO APPEAL DENIED.
McDonald, J., agrees in part and dissents in part with reasons.
I agree with the majority's affirmance of the judgment awarding medical expenses and temporary total disability benefits to Mr. Shelton; but, I disagree with *173 any award of penalties and attorney fees against Smitty's and would reverse the judgment as to both.
I think the WG manifestly erred in finding that Smitty's failed to reasonably controvert Mr. Shelton's entitlement to benefits. An employer should not be liable for penalties and attorney fees for taking a close factual or legal question to court for resolution. Although the Workers' Compensation Act is be liberally construed in regard to benefits, penal statutes are to be strictly construed. Young v. City of Gonzales , 14-1299 (La. App. 1 Cir. 3/12/15), 166 So.3d 1070, 1077 ; Pitre v. Buddy's Seafood , 11-0175 (La. App. 1 Cir. 8/16/12), 102 So.3d 815, 823, writ denied , 12-2058 (La. 11/16/12), 102 So.3d 41. To determine whether an employer has reasonably controverted a claimant's right, a court must ascertain whether the employer possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time the employer refused to pay all of part of the benefits. Brown v. Texas-LA Cartage, Inc. , 98-1063 (La. 12/1/98), 721 So.2d 885, 890.
When Smitty's denied benefits and medical treatment to Mr. Shelton, it had Mr. Shelton's accident report and a conflicting surveillance video, which gave Smitty's reason to question whether Mr. Shelton had staged the accident. Even if the accident was legitimate, as of March 24, 2016, Smitty's also had conflicting medical documentation regarding whether Mr. Shelton's injuries were degenerative or related to the accident. Mr. Nowak, Smitty's adjuster, stated during his deposition that his denial of benefits was because Mr. Shelton had been released to light-duty work. He also stated that the March 16, 2016 MRI report indicated Mr. Shelton's left knee injury was degenerative and this was the reason benefits were denied. Contrary to the majority's finding, Mr. Nowak did ask Dr. Chiasson's medical opinion on causation. Mr. Nowak's March 24, 2016 email to Smitty's personnel states that "despite our requests , [Dr. Chiasson's] notes did not state that the left knee issues were causally related to the work incident ...." (Emphasis added.)
Viewing all factual and medical information, I think Smitty's possessed sufficient information to reasonably counter Mr. Shelton's claim that his injuries were attributable to a work-related accident. I think the WO committed manifest error is concluding otherwise, and I would reverse all awards of penalties and attorney fees against Smitty's.

Mr. Shelton knew Smitty's had surveillance cameras, but did not know where the cameras were pointed.

The term "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

The McMurray test is used to evaluate individuals for tears in the meniscus of the knee. It is a rotation test for demonstrating tom cartilage of the knee. A positive test is an indicator for a tear of the meniscus. See Moody v. Cummings , 09-1233 (La. App. 4th Cir. 4/14/10), 37 So.3d 1054, 1058 n.4, writ denied, 10-1106 (La. 9/3/10), 44 So.3d 686.

An email sent by Mr. Nowak to co-workers on April 30, 2016, after benefits had already been denied, indicated "we are questioning the incident in general based on the evidence and surveillance video." Nevertheless, as stated above, when questioned on this point during his deposition, Mr. Nowak indicated he did not dispute the work accident occurred.

Under La. R.S. 23:1202(A)(2), the maximum compensation allowed at the time of Mr. Shelton's accident was "seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law." Subsection (B) provides that the average weekly wage "shall be determined by the administrator of the Louisiana Employment Security Law on or before August first of each year as of the quarter ending on the immediately preceding March thirty-first of each year."