STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1174


JACKSON HEADLEY

VERSUS

TEXTRON SYSTEMS

Decision[1] Rendered: **APR 2 6 2021**

* * * * * * *

ON APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
ST. TAMMANY PARISH, LOUISIANA
DOCKET NUMBER 18-04168 – DISTRICT 6

HONORABLE SAM LOWERY, WORKERS' COMPENSATION JUDGE

* * * * * * *

John J. Rabalais
Gabriel E.F. Thompson
Blake M. Alphonso
Covington, Louisiana

Attorneys for Defendant/Appellant
Textron Systems


Kristen Stanley-Wallace
Amber Sheppard
Slidell, Louisiana

Attorneys for Plaintiff/Appellee
Jackson Headley

**BEFORE: McDONALD, HOLDRIDGE, and PENZATO, JJ.**

---

[1] Louisiana Revised Statute 23:1310.5F requires that appellate courts publish workers' compensation decisions.

**McDONALD, J.**

In this workers' compensation case, the employer appeals from a judgment awarding benefits, penalties, and attorney fees to its former employee. After review, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Textron Systems hired Jackson Headley as a welder in June 2015. On Friday, September 8, 2017, Mr. Headley was working the night shift. Toward the end of the shift, Mr. Headley claims he felt a sharp, burning pain in his lower back as he stood up after completing a weld. He was able to finish his shift, after which he drove home, showered, took pain medicine, and went to bed. Mr. Headley did not immediately report the incident to anyone at Textron and did not seek medical attention over the weekend.

On Monday, September 11th, Mr. Headley and his then fiancée, now wife, Anna, called Clay Adkins, his supervisor, and told him he was not feeling well and would not be in to work. On Wednesday, September 13th, he called Mr. Adkins again and told him that he had hurt his back. According to Mr. Adkins, Mr. Headley did not tell him the injury was work-related. Mr. Adkins referred him to Courtney Jarvis, Textron's human resources representative. When Ms. Jarvis asked Mr. Headley if his back injury was work-related, he answered "no." Ms. Jarvis referred Mr. Headley to Metlife Services and Solutions, LLC, (Metlife), Textron's short-term disability insurance provider. According to Kathleen Wescott, the Metlife claims specialist who handled Mr. Headley's disability claim, the intake paperwork she received indicated that Mr. Headley's injury was not work-related, and when she talked to him later, the issue was not mentioned.

On September 15, 2017, one week after the accident, Mr. Headley also saw Dr. Eric Royster, a pain management doctor who had been treating him since September 2016 for a degenerative lumbar spine condition. Dr. Royster's contemporaneous medical records and his later deposition testimony differ as whether Mr. Headley told him he injured his back at work.

2

At the August 2019 trial of this matter, Mr. Headley, who has an intellectual disability and memory problem, testified that he initially did not think his injury was work-related, because he had not been hit by a crane, run over by a forklift, or some similar occurrence. In a September 2018 deposition, however, Mr. Headley admitted that he knew he should have reported the incident but did not want to because he did not want to lose his job.

Mr. Headley did not return to work at Textron after September 8, 2017. As directed by Ms. Jarvis, Mr. Headley filed a Metlife short-term disability claim. Metlife paid Mr. Headley disability benefits for six months, from September 2017 through March 2018. As those benefits ended, the Headleys asked both Ms. Wescott and Ms. Jarvis about other possible sources of income, including workers' compensation benefits. This was the first time either Ms. Wescott or Ms. Jarvis heard that Mr. Headley's disability was possibly work-related. Ms. Jarvis told the Headleys that Textron's standard policy required that employees seeking workers' compensation benefits do so within 21 days of the work-related accident.

At some point thereafter, Broadspire, Textron's workers' compensation administrator, received Mr. Headley's claim file. Sue Major, the Broadspire claims examiner assigned to the claim, contacted Alvin Givens, her Textron contact for workers' compensation claims, who told her he knew nothing about Mr. Headley's claim. Ms. Major later turned the file over to Textron's counsel after Mr. Headley filed his formal workers' compensation claim.

On June 25, 2018, Mr. Headley filed his disputed claim for compensation with the Office of Workers' Compensation (OWC), stating that he was injured while at work on September 8, 2017, and Textron had not paid him wage benefits or his medical expenses. He sought these items of recovery, as well as penalties and attorney fees. Textron answered the disputed claim, denying that Mr. Headley had a work-related injury.

During discovery, Textron acquired significant and conflicting information regarding Mr. Headley's medical history. The record shows Mr. Headley, 57-years-old

3

at the time of trial, had a documented history of lumbar degenerative disc disease dating back to 2001, about 16 years before the alleged September 2017 incident. More recently, he injured his back in a car accident in January 2015, about five months before beginning his Textron job. Dr. John Hardges treated Mr. Headley for low back and leg pain for over a year after the 2015 car accident. In August 2016, Dr. Hardges referred Mr. Headley to Dr. Royster, who then treated Mr. Headley monthly for lumbar radiculopathy, lumbar spondylolisthesis, lumbar degenerative disc disease, and chronic pain, up until the alleged September 2017 incident and after. Dr. Royster's September 15, 2017 record, one week after the incident, indicates Mr. Headley reported a "significant flare" of pain but no "specific injury." In an October 2018 deposition, however, Dr. Royster stated that, although not documented in his records, he remembered Mr. Headley telling him about the September 2017 incident. During discovery, Textron also discovered that, in May 2015, when Mr. Headley applied for Textron employment, he gave inaccurate information, including a failure to disclose that he had been in a car accident, that he was then under a doctor's care and currently taking medication for his back condition, and that he had other pre-existing medical conditions.

On August 23, 2019, a workers' compensation judge (WCJ) held a trial on Mr. Headley's disputed claim, at which the parties introduced considerable evidence. On July 24, 2020, the WCJ signed a judgment finding Mr. Headley sustained a work-related injury on September 8, 2017; ordering Textron to pay Mr. Headley's associated past, present, and future medical expenses, as well as indemnity benefits from that date, using $930 per week as the average weekly wage; ordering Textron to authorize Mr. Headley's continued treatment with a physician of his choice; and, assessing Textron with a $4,000 penalty and $14,000 in attorney fees.

Textron appeals from the adverse judgment, asserting the WCJ legally and manifestly erred in finding Mr. Headley sustained a compensable work-related injury, was entitled to penalties and attorney fees, and had made no willfully false statements to obtain workers' compensation benefits.

4

## DISCUSSION

In assignments of error numbers one, three, five, and seven, Textron contends the WCJ erred, because it did not set forth the applicable legal standards and burdens of proof in its "Final Judgment with Written Reasons." Upon completion of an OWC hearing, a WCJ is required to make such order, decision, or award as is proper, just, and equitable in the matter. La. R.S. 23:1310.5A(1). Textron has provided no authority requiring that the WCJ expressly set forth the applicable legal standards and burdens of proof applicable in its judgment or reasons for judgment. Silence as to the applicable legal standards and burdens of proof is not proof that the WCJ improperly applied them. These assignments of error are meritless.

### *COMPENSABLE INJURY*

In assignments of error numbers two and four, Textron contends the WCJ erred in factually determining that Mr. Headley was involved in a compensable work accident on September 8, 2017, and that he established a causal connection between his work and his alleged injury.

The Workers' Compensation Act provides coverage to a worker for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031A. A worker must prove the chain of causation required by the workers' compensation statutory scheme: he must establish by a preponderance of the evidence that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. *Vessel v. CB&I,* 19-0608 (La. App. 1 Cir. 9/2/20), ___ So.3d ___, 2020 WL 5229493 *4. A worker's testimony alone may be sufficient to discharge his burden of proving an accident, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Id.* at *5. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. *Id.*

The determination of whether a worker has carried his burden of proof is factual, and as such, we review the WCJ's factual findings for manifest error. In applying the

manifest error standard, this court must determine whether the WCJ's conclusion was reasonable, not whether the WCJ was right or wrong. If there is evidence indicating a reasonable possibility of the occurrence of an accident and a causal connection between the accident and worker's injury, then we cannot overturn the WCJ's factual finding concerning this issue. This is true even if convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently. *Id.* at *4-5.

As the WCJ noted, its factual determinations were hampered by Mr. Headley's limited intellectual ability and some of the witnesses' "less-than-perfect recollection." Given the "many and varied scenarios [of] who said what and who did what," the WCJ decided the medical testimony was dispositive of whether Mr. Headley had a compensable work-related accident on September 8, 2017. Thus, we will review that evidence to determine if there is a reasonable possibility that the September 8, 2017 accident occurred and that there is a causal connection between the accident and Mr. Headley's injury. *See Vessel,* 2020 WL 5229493 at *5.

In October 2016, about 11 months before the September 2017 incident, Mr. Headley had a magnetic resonance imaging scan (MRI) taken of his lumbar spine, which indicated he had significant disc degeneration at the L4-5/L5-S1 levels. In November 2017, about two months after the incident, a second MRI indicated to Dr. Royster that Mr. Headley also had a disc extrusion at the L2-3 level of his lumbar spine. When deposed in October 2018, Dr. Royster opined that the September 8, 2017 incident caused Mr. Headley's "new" L2-3 injury.

In early April 2018, Dr. Royster referred Mr. Headley to Dr. Aaron Dumont, a neurosurgeon. After examining Mr. Headley and reviewing the November 2017 MRI, Dr. Dumont noted that Mr. Headley had extensive lumbar degenerative damage at the L4-5/L5-S1 level and a herniated disc at the L2-3 level. He recommended that Mr. Headley undergo surgery.[2] In an October 2018 deposition, Dr. Dumont stated that he could not definitively conclude if Mr. Headley's L2-3 herniated disc was degenerative or trauma-related. Further, having only seen Mr. Headley once, Dr. Dumont deferred to

_____
[2] Mr. Headley had back surgery on December 26, 2018.

6

Dr. Royster as to causation.

In September 2018, Textron had Dr. Robert Applebaum, a neurosurgeon, examine Mr. Headley and review his medical records. Dr. Applebaum's September 20, 2018 report to Textron indicated that, although the September 2017 incident may have temporarily aggravated or accelerated Mr. Headley's degenerative disc disease, he had "not sustained any prolonged injuries" from the incident. In a December 2018 deposition, Dr. Applebaum stated that he had thereafter seen Mr. Headley's pre-incident and post-incident MRIs for the first time, and he noted the latter showed Mr. Headley had both an L4-5/L5-S1 and an L2-3 injury. Dr. Applebaum testified that the L2-3 injury could have been degenerative or trauma-based. When specifically asked if it was more probable than not that the September 2017 incident caused the L2-3 injury, Dr. Applebaum answered "Yes."

The above medical evidence indicates there is a reasonable possibility that, on September 8, 2017, Mr. Headley had a work-related accident that caused the L2-3 injury. After comparing Mr. Headley's October 2016 MRI (taken before the alleged incident) to his November 2017 MRI (taken after the alleged incident), Doctors Royster, Applebaum, and Dumont all noted that the former *did not show* an L2-3 injury, and the latter *did* show an L2-3 injury. Further, although Dr. Dumont gave no opinion as to causation, Doctors Royster and Applebaum both testified in their depositions that the September 2017 incident, as described by Mr. Headley, caused or probably caused the L2-3 injury. Thus, because the evidence reasonably supports the WCJ's factual finding of an accident and a causal connection between the accident and Mr. Headley's injury, we cannot overturn the WCJ's factual finding on this issue. *See Vessel,* 2020 WL 5229493 at *5. Textron's assignments of error numbers two and four are meritless.

### *PENALTIES AND ATTORNEY FEES*

The more difficult issue raised by this appeal is whether the WCJ properly assessed a penalty and attorney fees against Textron for denying Mr. Headley's workers' compensation claim. Although the medical evidence does indicate a reasonable possibility that a September 8, 2017 work accident caused Mr. Headley's L2-

7

3 injury, such does not necessarily show that Textron unreasonably controverted whether the L2-3 injury happened at work. In assignment of error number six, Textron contends the WCJ was clearly wrong in penalizing it, because Textron had overwhelming evidence to reasonably controvert Mr. Headley's credibility and his claim that he injured his back at work.

The Workers' Compensation Act pertinently provides that, unless an employer reasonably controverts a workers' compensation claim, its failure to pay such benefits in accordance with the Act shall result in a penalty and reasonable attorney fees. *See* La. R.S. 23:1201F. An employer reasonably controverts a claim when it has sufficient factual and/or medical information to counter the employee's factual and/or medical information throughout the time it refused to pay all or part of the benefits allegedly owed. *See Brown v. Texas-LA Cartage, Inc.,* 98-1063 (La. 12/1/98), 721 So.2d 885, 890; *Shelton v. Smitty's Supply, Inc.,* 17-1419 (La. App. 1 Cir. 6/12/18), 253 So.3d 157, 169. Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. The crucial inquiry is whether the employer had an articulable and objective reason to deny payment at the time it took action. *See Authement v. Shappert Engineering,* 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. *Quave v. Airtrol, Inc.,* 11-1182 (La. App. 1 Cir. 6/8/12), 93 So.3d 733, 740. A WCJ's determination that an employer should be cast with penalties and attorney fees is a factual question, and we review that determination under the manifest error standard of review. *Authement,* 840 So.2d at 1188-89.

In casting Textron with the $4,000 penalty and $14,000 attorney fee award, the WCJ judgment pertinently stated:

> I am hard-pressed to see how any reader of [the Royster/Applebaum/Dumont] medical opinions could possibly harbor, much less argue, that this employee did not suffer a debilitating spinal injury while working as a welder at Textron in precisely the manner he described. All three of these physicians are convinced that he did. They said so [in] simple declarative sentences, almost immune from mis-interpretation.

8

. . . .
> Despite all of this medical evidence at its disposal, [Textron] has refused to pay for [M]r. Headley's disc extrusion treatment.
>
> [Textron's] efforts to skirt the Workers' Compensation Law were heavy-handed, inept, and in the instance of invoking a self-generated and self-serving [s]tatute of [l]imitations, flagrantly illegal. Textron's attempts to paint Mr. Headley as a dishonest individual intent on committing [w]orkers' [c]ompensation fraud within the provisions of La. R.S. 23:1208 is a position utterly un-tethered to facts.

After thoroughly reviewing the record, and mindful that penalty statutes are strictly construed, we conclude the WCJ manifestly erred in casting Textron with a penalty and attorney fees. Although the medical evidence indicates there is a reasonable possibility that a September 8, 2017 work-related accident caused the L2-3 injury, the medical evidence is not as conclusive, or as "immune from misinterpretation," as the WCJ suggests.

From one week after the accident until some uncertain time in March or April 2018, Dr. Royster's medical records, which were presumably based on Mr. Headley's own words, indicated Mr. Headley's long-term degenerative disc disease had "flared" but that he had no new injury. According to Mrs. Headley, Dr. Royster did not tell the Headleys that Mr. Headley's condition was possibly work-related until Mr. Headley's disability benefits were ending or had ended. And, it appears that it was not until his October 2018 deposition that Dr. Royster remembered that Mr. Headley told him about the September 2017 work incident and that Dr. Royster then opined the injury was work-related. Further, as late as September 2018, when Dr. Applebaum examined Mr. Headley, Dr. Applebaum had seen the November 2017 MRI report, but had not yet seen Mr. Headley's November 2017 MRI studies, and his medical report to Textron as to causation was less than clear. It was not until his December 2018 deposition that Dr. Applebaum admitted that it was more probable than not that the September 2017 incident caused the L2-3 injury. Lastly, contrary to the WCJ's findings, Dr. Dumont did not opine that Mr. Headley's L2-3 injury happened at work; rather, in his October 2018 deposition, Dr. Dumont could not definitively conclude whether Mr. Headley's L2-3 herniated disc was degenerative or trauma-related and deferred to Dr. Royster on the

9

issue of causation. Thus, the WCJ manifestly erred in stating that all three doctors related Mr. Headley's L2-3 injury to the September 8, 2017 accident.

We also note that the reasonableness of Textron's denial of Mr. Headley's workers' compensation claim necessarily entails more than medical evidence. Rather as indicated in the *Brown, Shelton,* and *Authement* cases cited above, the "crucial inquiry" is whether Textron had sufficient information, both factual *and* medical, to amount to an "articulable and objective" reason to deny payment throughout the time it refused to pay Mr. Headley benefits.

Mr. Headley first sought workers' compensation benefits in April 2018. At that time, over seven months had passed since Mr. Headley's alleged unreported September 8, 2017 accident. Textron knew Mr. Headley had already received disability benefits for six months based on his representations to Textron and Metlife that his injury was *not* work-related.[3] Textron also knew that Mr. Headley sought workers' compensation benefits only after he had exhausted his Metlife disability benefits. Thus, it was only in April 2018 that Textron had a reason to scrutinize Mr. Headley's entitlement to workers' compensation benefits and to doubt the validity of his claim.

After Mr. Headley filed his disputed claim for compensation with the OWC in June 2018, the parties then conducted discovery. In the latter half of 2018, Textron: requested and received medical records pertaining to Mr. Headley from Dr. Hardges, Dr. Royster, Dr. Dumont, and Rayborn Correctional Center; had Dr. Applebaum examine Mr. Headley and review all of his medical records; received Dr. Applebaum's report that was inconclusive as to whether Mr. Headley had an accident on September 8, 2017 that caused him injury; and, deposed Mr. Headley, Dr. Royster, Dr. Dumont, and Dr. Applebaum. Textron also reviewed its own records regarding Mr. Headley's employment.

Information obtained during the above-described discovery cast further doubt on Mr. Headley's version of the September 2017 incident. It documented that Mr. Headley

---

[3] The WCJ found Textron had a duty to "initiate an investigation" into whether Mr. Headley's back injury was work-related, despite the fact that Mr. Headley told both Mr. Adkins and Ms. Jarvis that it was not. We disagree that Textron had such a duty.

had long term degenerative disc disease, injured his back in the 2015 car accident, and was under medical care for his back during his entire Textron employment – and, notably, it documented that Mr. Headley had misrepresented much of this information when he applied for Textron employment. This discovery also documented considerable other factual inconsistencies regarding whether Mr. Headley's L2-3 injury was actually attributable to a work-related accident on September 8, 2017. As the WJC noted, the record shows that some of the witnesses in this case had "less-than-perfect recollection" resulting in "many and varied scenarios [of] who said what and who did what."

Further, in its reasons, the WCJ states that he is not sure anybody at Textron ever read the depositions of Dr. Royster, Dr. Dumont, and Dr. Applebaum. He provides no factual basis for this statement. He also states that Broadspire's claims examiner, Ms. Majors, testified that "she never received any information regarding any depositions taken in order to re-evaluate whether benefits would be instituted." But, Ms. Majors also testified that she did not know the date when she was assigned Mr. Headley's claim and that she turned over Mr. Headley's file to Textron's counsel sometime after Mr. Headley filed his OWC claim in June 2018. Thus, there is no proof in the record of exactly what information Ms. Majors had during her handling of the claim, of when she turned the file over to Textron's counsel, or even if the medical depositions had been taken before she turned the file over to Textron's counsel. Thus, the WCJ manifestly erred in using this information to support its finding that Textron unreasonably denied Mr. Headley's workers' compensation claim.

Based on our review of the record, we conclude Textron reasonably controverted Mr. Headley's workers' compensation claim and had an articulable and objective reason to deny his claim throughout the time it refused to pay the benefits he alleged were owed. Although Textron could not dispute the medical evidence showing the "new" L2-3 injury existed, Textron certainly had sufficient factual and medical information to dispute Mr. Headley's claim that the L2-3 injury happened while Mr. Headley was at work and in the manner he described. And, given Mr. Headley's inconsistent

11

descriptions of what happened, and the conflicting medical records Textron obtained during discovery, Textron even had reason to doubt Dr. Royster's and Dr. Applebaum's conclusions that the September 8, 2017 incident caused Mr. Headley's L2-3 injury, because their conclusions were solely based on Mr. Headley's discredited version of what happened.

Accordingly, construing La. R.S. 23:1201F strictly, and finding that a bona fide dispute existed as to Mr. Headley's entitlement to benefits, we reverse the July 24, 2020 judgment insofar as it assessed Textron with a $4,000 penalty and $14,000 in attorney fees. *See Quave*, 93 So.3d at 741.

*FORFEITURE OF BENEFITS*

In assignment of error number eight, Textron contends the WCJ erred in failing to find Mr. Headley violated La. R.S. 23:1208 by making willfully false statements for the purpose of obtaining workers' compensation benefits. Under La. 23:1208A and E, if a WCJ determines that an employee has willfully made a false statement or representation for the purpose of obtaining any workers' compensation benefit, that employee shall forfeit any right to such benefits. A WCJ's determination that an employee forfeited workers' compensation benefits is a factual issue, and we review that determination under the manifest error standard of review. *Quave*, 93 So.3d at 739. Because forfeiture of benefits is a harsh remedy, La. R.S. 23:1208 must be strictly construed. *Shelton*, 253 So.3d at 164.

The record plainly shows Mr. Headley made false statements regarding his medical history. Ironically, many of Mr. Headley's false statements were not made for the purpose of obtaining workers' compensation benefits, but were instead made to Textron and doctors to either get his Textron job or to avoid losing that job because of his back problems. Thus, we disagree with the WCJ's finding that Textron's suspicion of Mr. Headley's intent was "un-tethered to facts." However, based on Mr. Headley's intellectual disability and memory problems, we conclude that, if Mr. Headley did make false statements specifically to get benefits, the WCJ did not err in finding that the false statements were not willfully made. *See Prine v. Coastal Bridge Co., L.L.C.,* 13-1630

12

(La. App. 1 Cir. 10/29/14), 157 So.3d 732, 743 (finding no violation of La. R.S. 23:1208 when worker's lack of education and inability to understand was a factor in the way he responded to many questions throughout the course of his claim). This assignment of error is meritless.

## CONCLUSION

For the foregoing reasons, the July 24, 2020 judgment is affirmed in part and reversed in part. We affirm the judgment insofar as it orders Textron to: (1) pay Jackson Headley's past, present, and future medical expenses associated with Mr. Headley's on the job injury, and (2) pay Jackson Headley indemnity benefits from September 8, 2017, using $930 per week as the average weekly wage, and (3) authorize continued treatment with Jackson Headley's choice of physician. We reverse the judgment insofar as it orders Textron to pay a $4,000 penalty and $14,000 attorney fees. We assess costs of this appeal equally to the parties.

**AFFIRMED IN PART; REVERSED IN PART.**

13